**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | | |
|---|---|---|
| Root Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER ON MOTIONS FOR** |
| | ) | **SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | Case No. 3:23-cv-235 |
| Frank Doffour, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Frank Doffour, an independent delivery driver for Capital Express, LLC ("Capital Express"), bought an automobile insurance policy from Root Insurance Company ("Root") for his 2008 Ford Econoline van. The policy had an exclusion for "retail or wholesale delivery" use of the vehicle. While driving Doffour's van with delivery product along a scheduled route, Josephine Jacobawi crashed into LakeSide Concrete Masonry & Construction ("LakeSide") employees, Joshua Hayes and Robert Ulman. Jacobawi died, and Hayes and Ulman were injured. Root sued Doffour, Jacobawi's estate, LakeSide, Hayes, Ulman, and Capital Express, seeking a declaratory judgment that it has no duty to defend or indemnify Doffour based the policy's retail or wholesale delivery exclusion. LakeSide seeks a declaratory judgment that Root is liable up to the full policy limits, or instead, that North Dakota law sets a minimum level of coverage. Both parties move for summary judgment. The motions are granted in part and denied in part.

I.   **FACTS**

Capital Express is a logistics company handling final mile delivery services. Doc. 40-2 at 9. It is headquartered in Omaha, Nebraska but maintains 35 locations throughout the country, including one in Fargo, North Dakota. Id. at 9, 27. Customers ship product to its distribution centers, and Capital Express hires independent contractors to deliver the products from its

distribution center to the end point customer. Id. at 63. The drivers sign an Independent Contractor Service Agreement with Capital Express, detailing that Capital Express "shall have no right to direct or control the details or methods by which the IC performs its services." Doc. 40-4. The drivers may hire a subcontractor to complete deliveries that the driver contracted to perform for Capital Express. Doc. 40-2 at 38-39. When a driver accepts a delivery route, the driver is required to log into Capital Express's app, which sends a bill of lading that the end customer eventually signs to show proof of delivery. Doc. 40-2 at 41.

Doffour is an independent contractor who contracts to complete deliveries for Capital Express. Doc. 40-4. He owned a 2008 Ford Econoline van that he used to complete deliveries. Doc. 40-5. On November 7, 2022, Jacobawi, also an independent contractor approved by Capital Express, died in a motor vehicle accident while driving Doffour's van. See Doc. 40-11. Jacobawi was transporting pharmaceutical supplies from McKesson Drug Company along Doffour's delivery route when the accident occurred. Docs. 40-8, 40-9. She collided with a vehicle driven by LakeSide employees, Joshua Hayes and Robert Ulman. Doc. 40-11.

Doffour insured his van through Root. Doc. 40-1. The policy provides a bodily injury liability limit of $250,000 per person and $500,000 per accident, and a property damage liability limit of $100,000 per accident. Id. The policy states that Root will defend and indemnify Doffour for bodily injury or property damage sustained in an auto accident. Id. at 35. Coverage extends to any person operating the covered vehicle within the scope of Doffour's permission. Id. at 7. But in Exclusion A.5, the policy excludes coverage for:

> liability arising out of ownership or operation of a vehicle while it is being used . . . for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

Doc. 40-1 at 8.

The policy also contains a North Dakota Amendatory Endorsement with the following definition:

> Throughout the policy, "minimum limits" refers to the following limits of liability as required by North Dakota law, to be provided under a policy of automobile insurance:
> 1. $25,000 for each person and $50,000 total for each accident, with respect to "bodily injury"; and
> 2. $25,000 total for each accident with respect to "property damage."

Id. at 35.

Root asserts one cause of action—for declaratory judgment—that it has no duty to defend or indemnify Doffour, the Estate of Jacobawi, or Capital Express because of Exclusion A.5. Doc. 1. LakeSide, Ulman, and Hayes asserted a counterclaim against Root seeking a declaratory judgment that Exclusion A.5 does not apply, or in the alternative, North Dakota's financial responsibility law as to automobile insurance requires a minimum amount of coverage. Doc. 9 at 11-12. Both parties moved for summary judgment.

## II.  LAW AND ANALYSIS

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (citation omitted).

Under the Declaratory Judgment Act, courts "may declare the rights and other legal relations of any interested party seeking such declaration" if an actual controversy exists. 28 U.S.C. § 2201(a). "In the insurance policy coverage context, a declaratory judgment action is ripe

irrespective of whether the underlying litigation is ongoing or resolved." Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC, 620 F.3d 926, 934 (8th Cir. 2010); see also Alston v. ACE Am. Ins. Co., 2020 WL 8084324, at *4 (D.N.D. Dec. 30, 2020) ("Courts have consistently allowed insurers to sue insureds prior to the resolution of the underlying action.").

This is an insurance coverage dispute, so North Dakota law applies. When construing insurance contracts, North Dakota courts aim "to give effect to the mutual intention of the parties as it existed at the time of contracting." Ziegelmann v. TMG Life Ins. Co., 2000 ND 55, ¶ 6, 607 N.W.2d 898. The North Dakota Supreme Court has repeatedly articulated its standard for interpreting insurance contracts:

> We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

Miller v. Nodak Ins. Co., 2023 ND 37, ¶ 14, 987 N.W.2d 369 (quoting Dahms v. Nodak Mut. Ins. Co., 2018 ND 263, ¶ 8, 920 N.W.2d 293).

"Exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer." Kath v. Farmers Union Mut. Ins. Co., 2024 ND 190, ¶ 9, 12 N.W.3d 846 (quoting Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co., 2003 ND 50, ¶ 10, 658 N.W.2d 363). "While exclusionary clauses are strictly construed, a contract will not be rewritten to impose liability when the policy unambiguously precludes coverage." Id. (quoting Forsman v. Blues, Brews & Bar-B-Ques, Inc., 2017 ND 266, ¶ 10, 903 N.W.2d 524). "[T]he insurer carries

the burden of establishing the applicability of exclusions." Id. (quoting Forsman, 2017 ND 266, ¶ 12, 903 N.W.2d 524).

### A. Exclusion of Exhibits

As an initial matter, LakeSide argues there is no admissible evidence to prove Jacobawi drove Doffour's van for "retail or wholesale delivery" purposes, taking issue with the admissibility of multiple exhibits offered by Root. When the moving party properly supports a motion for summary judgment, the opposing party may not rest on mere allegations or denials, but must show, through presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank, 11 F.4th 702, 710 (8th Cir. 2021).

LakeSide argues that an audio recording of a conversation between Doffour and a Root representative is inadmissible hearsay. Root did not attach this recording to its exhibits in support of its motion (see Doc. 40) but listed the recording in its statement of the record. Doc. 39. Root argues the recording is admissible as an admission by an opposing party. See Fed. R. Evid. 801(d)(2). But Root offers the recording against LakeSide, not Doffour. See Doe v. Farmer, 2009 WL 3768906, at *7 (M.D. Tenn. Nov. 9, 2009) (holding that the Rule 801(d)(2) exception to hearsay "does not apply when a plaintiff seeks to admit the statement of a co-defendant"). So, for the purposes of summary judgment, the audio recording was not considered.

LakeSide also argues that an accident report prepared by Trooper Devin Olson of the South Dakota Highway Patrol is inadmissible hearsay. LakeSide objects to the consideration of the report in its entirety, but it specifically focuses on Trooper Olson's statements in the report that Jacobawi was delivering McKesson Drug Company supplies for Capital Express at the time of the accident. Root contends that it does not intend to offer the report at trial.

LakeSide is correct that Trooper Olson's conversations with witnesses are inadmissible hearsay. See Premium Fin. Specialists, Inc. v. Mid-Continent Cas. Co., 2011 WL 5117648, at *1 (W.D. Mo. Oct. 25, 2011) (refusing to admit an official record under Rule 803(8) that contained "nothing but statements of witnesses"). But LakeSide is incorrect that the entire report must be excluded. "As is recognized by courts and the committee notes to Federal Rule of Evidence 803, '[p]olice reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.'" Ware v. Wind Transp. Sols., Inc., 2025 WL 1642407, at *3 n.3 (E.D. Mo. June 9, 2025). In his report, Trooper Olson describes his firsthand observations from the scene of the accident. So, for the purposes of this motion, the Court considered Trooper Olson's firsthand observations from the accident scene.

Finally,[1] LakeSide argues that the deposition testimony of Monte O'Hara, Capital Express's Chief Executive Officer, should be excluded to the extent O'Hara claims that Jacobawi was providing delivery services for Capital Express at the time of the accident. The Court did not consider O'Hara's testimony on this issue.

**B.      Applicability of Exclusion A.5**

The legal question at issue here is whether Exclusive A.5 applies. In short, it does because Jacobawi used Doffour's van for "retail or wholesale deliveries" at the time of the accident.

In his report, Trooper Olson stated he observed the Milbank Fire Department pulling Jacobawi from the vehicle, and he found her driver's license when he examined the vehicle. Root attached pictures of the vehicle, taken by officers, which show numerous totes in the van labeled "Property of McKesson" and an invoice from McKesson to Carlson Drug in Ortonville, Minnesota.

---

[1] To be clear, the Court's findings are limited to its decision on these motions for summary judgment. At trial, there may be other reasons why certain evidence is admissible.

Doc. 40-10. Given that, LakeSide does not appear to dispute that Jacobawi was driving Doffour's van at the time of the accident or that McKesson supplies were present in the van. Instead, LakeSide argues that Root did not offer sufficient evidence to prove that Jacobawi used the van as Doffour's subcontractor to make deliveries to McKesson's customers. Root offered a delivery list and a map detailing Doffour's contracted route from Fargo through northeastern South Dakota and western Minnesota. Docs. 40-8, 40-9. Neither exhibit indicates a date, but Root labeled the exhibits "dated 11/7/22." LakeSide does not dispute that the exhibits show Doffour's contracted delivery route for November 7, 2022, the date of the accident. So, there is no genuine dispute that Jacobawi was Doffour's subcontractor to make deliveries for Capital Express on the date of the accident. The evidence is clear that Jacobawi drove Doffour's van, loaded with McKesson supplies, along the contracted delivery route, and collided with LakeSide employees.

LakeSide also argues that, assuming Jacobawi was Doffour's subcontractor, her use of the van did not constitute retail or wholesale deliveries and notes those terms are undefined in the policy. It contends that Capital Express is not a retailer or wholesaler because it simply transports product from the wholesaler (McKesson) to the retailer (the pharmacies). Drivers contract with Capital Express, meaning the drivers provide "final mile delivery," not retail or wholesale delivery.

LakeSide's argument is too narrow. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." Miller v. Nodak Ins. Co., 2023 ND 37, ¶ 14, 987 N.W.2d 369 (quoting Dahms v. Nodak Mut. Ins. Co., 2018 ND 263, ¶ 8, 920 N.W.2d 293). Exclusion A.5 excludes coverage while the vehicle is being used "for retail or wholesale delivery." "Retail" and "wholesale" are disjunctive adjectives modifying "delivery." Black's Law defines wholesale as the "sale of goods or commodities to a retailer for resale, and not to the ultimate consumer." Wholesale, Black's Law Dictionary (12th ed. 2024). McKesson

7

sold the products to the pharmacies as wholesale goods. Capital Express delivered wholesale goods, on behalf of McKesson, to retailers. Capital Express's act of delivering the goods does not change their character as wholesale goods. It makes no difference whether McKesson delivered the goods itself or contracted a common carrier, like Capital Express, to make the deliveries. See Walgreens Specialty Pharmacy, LLC v. Comm'r of Rev., 916 N.W.2d 529, 535 (Minn. 2018) ("Even though the legend drugs were delivered by common carrier, rather than by WSP's own employees or using WSP's own vehicles, those drugs were still delivered 'by' WSP to Minnesota."). Jacobawi used Doffour's van to make wholesale deliveries. As such, Exclusion A.5[2] applies and denies coverage because the vehicle was used for a wholesale delivery.

    **C.**    **Applicability of North Dakota Century Code Section 39-16.11**

Despite Exclusion A.5's applicability, LakeSide argues that North Dakota's financial responsibility law applies and makes the Exclusion void against public policy. And if the Exclusion is void, LakeSide argues Root is liable up to its coverage limit. Root argues that North Dakota case law instructs that exclusions only violate public policy if they exclude entire classes of potential beneficiaries. But the statute and case law cut against Root.

Section 39-16.11 of the North Dakota Century Code details the requirements for auto insurance policies. A policy may be either an owner's policy or an operator's policy. N.D.C.C. § 39-16.1-11(1). "[O]ne policy covers the use of a particular car and the other covers use of any car." State Farm Mut. Auto Ins. Co. v. Gruebele, 2014 ND 105, ¶ 17, 846 N.W.2d 745. Owner's policies must insure both the named insured and anyone driving the vehicle with the owner's permission. N.D.C.C. § 39-16.1-11(2)(b). Operator's policies must insure the named insured for damages

---

[2] LakeSide also argues in passing that Exclusive A.5 is ambiguous. But it does not explain how or why. Given the limited argument, the Court does not find the Exclusion is ambiguous.

"arising out of the use by the person of any motor vehicle." N.D.C.C. § 39-16.1-11(3). An operator's policy may limit coverage by "excluding certain classes or types of motor vehicles." Id. For both policy types, the statute sets the minimum coverage limit at $25,000 per person, and $50,000 per accident for bodily injury, and $25,000 for property damage. N.D.C.C. § 39-16.1-11(2)-(3). "Such provisions are express declarations by the Legislature of the public policy of this State, and as such are implicit in the contract of insurance." Grinnell Mut. Reinsurance Co. v. Thompson, 2010 ND 22, ¶ 16, 778 N.W.2d 526 (quoting Hughes v. State Farm Mut. Auto Ins. Co., 236 N.W.2d 870, 885 (N.D. 1975)). "The basic purpose for the Legislature's enactment of financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster." Hughes, 236 N.W.2d at 882.

Root argues that Exclusion A.5 does not violate public policy. It correctly notes that the North Dakota Supreme Court has never addressed this specific "retail or wholesale delivery" exclusion. It cites State Farm Mut. Auto. Ins. Co. v. LaRoque, 486 N.W.2d 235 (N.D. 1992), to argue that the North Dakota Supreme Court has permitted certain exclusions despite the financial responsibility laws. In LaRoque, the North Dakota Supreme Court analyzed whether the financial responsibility laws allowed an insurer to exclude coverage for "non-owned cars." Id. The policy excluded coverage for LaRoque's use of a vehicle owned by another person residing in his household. Id. at 238. Importantly, the North Dakota Supreme Court analyzed the statutory requirements for operator's policies under section 39-16.1-11(3), not the requirements for owner's policies under section 39-16.1-11(2)(b). The court held that the "financial responsibility laws do not evidence a clear public policy that a motor vehicle liability policy cover the named insured for every automobile that the insured might drive." Id. at 240. The court's assessment of public policy is bolstered by the operator's policy statute, which permits insurers to limit coverage "by excluding

9

certain classes or types of motor vehicles." N.D.C.C. § 39-16.1-11(3). But the owner's policy statute does not contain similar limitations. See N.D.C.C. § 39-16.1-11(2)(b). This omission in the owner's policy statute suggests that the legislature intended to forbid exclusions under an owner's policy. See Tibor v. Tibor, 2001 ND 43, ¶ 46, 623 N.W.2d 12 (Sandstrom, J., dissenting) ("When a legislature or administrative agency places a particular provision in one place and omits it in another, it is presumed the provision does not apply where it is omitted.").

Root points to Chapter 26.1-40.2 of the North Dakota Century Code to argue that Exclusion A.5 is not void against public policy. Chapter 26.1-40.2 covers "delivery networks," which are essentially online, gig-based delivery services, like DoorDash. See N.D.C.C. § 26.1-40.2-01. The relevant section allows insurers to exclude coverage while the insured provides services during the "delivery period." N.D.C.C. § 26.1-40.2-04(1).

Chapter 26.1-40.2 does not save Root's argument. Indeed, the statute states, "This chapter does not [i]nvalidate or limit an exclusion contained in a motor vehicle liability insurance policy." N.D.C.C. § 26.1-40.2-04(2). The statute says nothing about whether other sections of the North Dakota Century Code may invalidate exclusions contained in policies. What is more, the North Dakota Supreme Court in Kambeitz v. Acuity Ins. Co., afforded significant weight to the fact that section 39-16.1-11 specifically governs the motor vehicle financial responsibility laws. 2009 ND 166, ¶ 14, 772 N.W.2d 632 ("[B]ecause N.D.C.C. § 39–16.1–11(6) is a specific provision relating to motor vehicle liability policies, it prevailed over the statutory provisions generally applicable to insurance contracts currently codified in N.D.C.C. ch. 26.1–29.").

Although the financial responsibility law applies, it is also clear that the statute sets a mandatory minimum level of coverage. LakeSide is incorrect that the statute makes Root liable for the amount up to its coverage limit. The plain language of section 39-16.1-11 is clear:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage is not subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage, the term "motor vehicle policy" applies only to that part of the coverage which is required by this section.

N.D.C.C. § 39-16.1-11(7). Here, Root insured Doffour for $250,000 per person and $500,000 per accident for bodily injury and $100,000 for property damage. Doc. 40-1 at 3. The financial responsibility law in section 39-16.1-11(2)(b) requires Root to provide a minimum coverage of $25,000 per person, and $50,000 per accident for bodily injury, and $25,000 for property damage. The policy amounts exceeding the statutory minimum coverage are "not subject to the provisions of" section 39-16.1-11. Root is liable to indemnify Doffour up to the statutory minimum.

### III.   CONCLUSION

For the reasons above, Root's motion for summary judgment (Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**. LakeSide's motion for summary judgment (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 30th day of September, 2025.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court

11